**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

PATRICK E. BOOTHE and JUDY BOOTHE,   )
                                          )
       Plaintiffs,                      )
                                          )
v.                                           )
                                          )
MARSHALL BROWNING HOSPITAL,    )
       Defendant,                    )
                                          )
and                                          )
                                          )
K. RAJASEKHARA WARRIER, M.D.    )
                                          )
       Respondent in Discovery.     )

## COMPLAINT

       COME NOW the Plaintiffs, PATRICK E. BOOTHE AND JUDY BOOTHE, by counsel, and complaining of Defendant MARSHALL BROWNING HOSPITAL and Respondent in Discovery K. RAJASEKHARA WARRIER, M.D., show as follows:

### JURISDICTIONAL FACTS

1. That Plaintiffs are and at all relevant times have been residents of the Commonwealth of Kentucky.

2. That the defendant Marshall Browning Hospital is a Critical Access Hospital resident at and within DuQuoin, Illinois, and providing 24-hour emergency services at and within Perry County, Illinois.

3. That the Respondent in Discovery K RAJASEKHARA WARRIER, M.D. is a resident of Hoffman Estates, Illinois, who at all relevant times was a physician duly licensed to

practice medicine in all its branches by the State of Illinois and practicing as an emergency department attending physician at Marshall Browning Hospital.

4. That the conduct complained of occurred at Marshall Browning Hospital, in Perry County, Illinois, on the 22nd day of March, 2010.

5. That jurisdiction of this cause is founded upon 28 U.S.C.A. 1332, in that the amount in controversy exceeds $75,000 exclusive of interest and costs.

## OPERATIVE FACTS

6. That the Plaintiffs were and are husband and wife, mutually dependent one on the other for love and support and dependent on the marital relationship for all of the normal and expected benefits thereof.

7. That on and prior to March 22, 2010, Plaintiff Patrick E. Boothe was gainfully employed as an electrician, and on March 22, 2010 was present at a Verizon store in DuQuoin, Illinois in his capacity as an electrician helping to provide renovations to that store.

8. That Plaintiff Patrick E. Boothe had begun work at the Verizon store on March 22, 2010 at approximately 2 PM, and had worked continuously on the renovations until approximately 6 PM, when he came down off a ladder and went outside for a cigarette break.

9. That Plaintiff Patrick E. Boothe reentered the store following the cigarette break, spoke briefly with other persons assisting with the renovation work, and at a point in time after 6:30 PM began to feel dizzy and otherwise out of sorts.

10. That shortly before 7 PM a Verizon employee called for an ambulance and advised the 911 operator that a person was down at the store and appeared to be having a stroke.

11. That an ambulance arrived at the Verizon store within minutes of the telephone call and transported Plaintiff Patrick E. Boothe to the emergency department of the defendant Marshall Browning Hospital, arriving at approximately 7:15 PM.

12. That Plaintiff Patrick E. Boothe was thereafter attended to by one or more members of the nursing staff of Marshall Browning Hospital, and came under the care of the Respondent in Discovery K. Rajasekhara Warrier, M.D., as well as other members of the medical staff of Marshall Browning Hospital.

13. That Plaintiff Patrick E. Boothe was triaged as a stroke patient by the staff caring for him at Marshall Browning Hospital, and that following confirmation of an ischemic stroke and at approximately 8:15 a decision was reached by Dr. Warrier – in consultation with the attending neurologist – that Plaintiff Patrick E. Boothe should receive an infusion of Activase, the drug of choice for tissue plasminogen activator (commonly called tPA) therapy for treatment of the stroke which he was experiencing.

14. That the window of opportunity for initiating tPA therapy was commonly accepted in March of 2010 at facilities such as Marshall Browning Hospital to close three hours after the last time a stroke patient was known to be symptom free.

15. That the purpose of tPA therapy is to treat the stroke by opening the affected artery and thereby minimizing further progression of the stroke and limiting the extent of brain damage in the patient.

16. That tPA therapy was at all material times the generally accepted method for the treatment of the type of stroke experienced by Plaintiff Patrick E. Boothe.

17. That despite the fact that Marshall Browning Hospital was a fully credentialed and certified Critical Access Hospital, it had no Activase on hand on March 22, 2010, as a result of which Plaintiff Patrick E. Boothe did not receive tPA therapy.

18. That Plaintiff Patrick E. Boothe's stroke progressed and became disabling to him, so that he can no longer be gainfully employed.

### COUNT I (MARSHALL BROWNING – INSTITUTIONAL NEGLIGENCE)

19. That Marshall Browning Hospital at all times owed to the plaintiffs a duty of reasonable care.

20. That in violation of its duty aforesaid, defendant Marshall Browning Hospital, committed one or more of the following negligent acts or omissions:

    a. Failed to have appropriate policies and procedures in place to verify the availability of tPA;

    b. Failed to institute appropriate protocols requiring staff to verify that critical medications were readily available;

    c. Failed to train its staff in the appropriate steps to take to insure that critical medications were readily available.

21. That as a direct and proximate result of the negligence aforesaid, Plaintiff Patrick E. Boothe was deprived of the chance for avoiding or minimizing the effects of his stroke, suffered serious and permanent death of brain tissue, is left with neurological

impairments which prevent his return to work and which have impaired his independent functioning and his ability to fulfill his activities of daily living, and has in addition suffered the loss of earning capacity and has incurred and will in the future incur large expenses for medical, nursing and other supportive care.

22. That as a further direct and proximate result of the negligence aforesaid, Plaintiff Judy Boothe has been deprived of the society, companionship, and normal marital relations of her husband, as well as of the value of his services to date and in the future.

## COUNT II (MARSHALL BROWNING – VICARIOUS LIABILITY)

23. That both the nursing and other staff providing care to Plaintiff Patrick E. Boothe at Marshall Browning Hospital were either actual or apparent agents or employees of Defendant Marshall Browning Hospital.

24. That in providing care to Patrick E. Boothe, such agents had a duty to possess and use the knowledge, skill and care ordinarily used by reasonably careful medical professionals.

25. That acting through such agents and in violation of their duty of care aforesaid, Defendant Marshall Browning Hospital committed one or more of the following negligent acts or omissions:

    a.  Failed to follow policies and procedures to verify the availability of tPA;

    b.  Failed to observe and follow protocols requiring staff to verify that critical medications were readily available;

     c.  Failed to insure that critical medications were readily available;

     d.  Failed in the absence of tPA to initiate timely referral to a facility where necessary care and treatment could be rendered.

26. That as a direct and proximate result of the negligence aforesaid, Plaintiff Patrick E. Boothe was deprived of the chance for avoiding or minimizing the effects of his stroke, suffered serious and permanent death of brain tissue, is left with neurological impairments which prevent his return to work and which have impaired his independent functioning and his ability to fulfill his activities of daily living, and has in addition suffered the loss of earning capacity and has incurred and will in the future incur large expenses for medical, nursing and other supportive care.

27. That as a further direct and proximate result of the negligence aforesaid, Plaintiff Judy Boothe has been deprived of the society, companionship, and normal marital relations of her husband, as well as of the value of his services to date and in the future.

## COUNT III (K RAJASEKHARA WARRIER, M.D. –RESPONDENT IN DISCOVERY)

28. That K. Rajasekhara Warrier, M.D., is believed to have information essential to the resolution of this cause of action, and as such is hereby designated as a Respondent in Discovery, pursuant to 735 ILCS 5/2-402.

WHEREFORE, Plaintiffs pray money damages against the Defendants and each of them in such an amount substantially in excess of $75,000 as the trier of fact may find, together with costs of suit.

PATRICK E. BOOTHE and JUDY BOOTHE, Plaintiffs,

By: BLAN LAW OFFICES

By: _____

Kennith W. Blan, Jr.
ARDC # 0223972

Kennith W. Blan, Jr.
BLAN LAW OFFICES
2500 North Vermilion, Suite 3
P. O. Box 1995
Danville, IL 61834-1995
Telephone: 217/443-5400
Facsimile: 217/443-5155
Email: ken@blanlaw.com

**AFFIDAVIT**

STATE OF ILLINOIS     )
                           ) SS
COUNTY OF SANGAMON )

COMES NOW Affiant, pursuant to §2-622(a)1 of the Illinois Code of Civil Procedure, being first duly sworn on oath, states as follows:

1.     That Affiant has reviewed the facts of this case with a physician practicing and teaching in the same areas of medicine as the defendants and has consulted with the reviewing professional regarding relevant issues involved in this case.

2.     That the consulting professional is knowledgeable in the relevant issues of this particular case, as evidenced by his report attached hereto.

3.     That the reviewing professional practices or has practiced within the last six years or teaches or has taught within the last six years in the same areas of health care or medicine that are at issue in this case.

4.     That the reviewing professionals is qualified by experience or demonstrated competence in the subject of the case, and that he has determined in a written report, after review of the medical records and other pertinent material, that there is a reasonable and meritorious cause for the filing of this Complaint.

5.     That Affiant has concluded on the basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for filing this case.

6.     That the report of the reviewing health care practitioners is attached hereto as Exhibit A.

FURTHER THE AFFIANT SAYETH NOT.

_____
Kennith W. Blan, Jr.

Subscribed and sworn to before me this ___9 th___ day of ___JANUARY___, 2012.

_____

OFFICIAL SEAL
LYNDY E BLAN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/28/13

Page 8 of 8

OFFICIAL SEAL
LYNDY E BLAN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/28/13

**CERTIFICATE OF MERIT WITH RESPECT TO**
**MARSHALL BROWNING HOSPITAL**

I.   I am a medical doctor. My name and professional address is:

>    Arthur M. Pancioli
>    Department of Emergency Medicine
>    University of Cincinnati College of Medicine

II.  I am licensed to practice medicine in the states of Ohio and Kentucky.

III. I am a board certified emergency medicine physician and a fellow of the American College of Emergency physicians, as well as the Richard C. Levy Professor and Chairman of the Department of Emergency Medicine at the University of Cincinnati College of Medicine.  For more than fifteen years I have had a special interest in stroke care and been active in defining stroke care and researching, writing and lecturing about stroke care with the American Heart Association, The American Stroke Association Advisory Working Group, National Institute of Neurological Diseases and Stroke, many professional organizations, and have performed actual clinical care of patients with strokes, as part of the Greater Cincinnati/Northern Kentucky Stroke team.

IV.  I am familiar with acute management of neurologic symptoms and intervention with tPA, as it applies to this case scenario.

V.   I have had an opportunity to review the medical records and radiology studies documenting care provided to Patrick Boothe both at Marshall Browning Hospital on March 22, 2010, as well as his subsequent admission and treatment at St. Louis University Hospital following transfer of his care from Marshall Browning to SLU.

VI.  Patrick Boothe presented to the emergency department (via EMS) at Marshall Browning at 7:15 PM on March 22, 2010 with signs and symptoms of acute stroke, which was appropriately worked up by the emergency department attending, Dr. Krishnan Warrier, who in consultation with the attending neurologist and at approximately 8:15 PM ordered the administration of thrombolytic therapy (tPA) to treat the ischemic stroke which had been suspected upon admission and confirmed by the diagnostic work-up.

VII. The order for tPA administration was appropriate for Mr. Boothe and consistent with the NINDS stroke protocol then in effect, as well as in accordance with the Marshall Browning Hospital thrombolytic protocol as reflected in Mr. Boothe's chart.

VIII. The chart, however, reflects an untimed entry by Dr. Warrier that no tPA was available at the hospital, despite thrombolytic administration for acute stroke of the type experienced by Mr. Boothe being the treatment of choice and standard of care.

IX.  The chart reflects a conversation by Dr. Warrier with a Carbondale Illinois hospital at 8:35 PM, during which he learned that its stroke care department was closed, following which Dr. Warrier contacted St. Louis University Hospital and arranged transfer of Mr. Boothe to that facility via helicopter, which departed Marshall Browning Hospital at 9:28 PM, a point in time which was already beyond the window of opportunity to administer tPA.

X.   In the interval from diagnosis at Marshall Browning to arrival and further workup at St. Louis University Hospital, Mr. Boothe's stroke progressed from being treatable to inevitable, and left him with permanent, disabling deficits.

XI.    OPINION: I have formed the following opinions after reviewing these medical records that I hold to a
       reasonable degree of medical certainty:

       a.  Based on his presenting signs and symptoms, Mr. Boothe was a candidate for tPA.

       b.  The ED physician and nurses at Marshall Browning took appropriate steps to work up the stroke
           and tPA was appropriately ordered to prevent or minimize Mr. Boothe's neurological injury.

       c.  As a Critical Access Hospital, Marshall Browning should have had a mechanism in place to insure
           that such a fundamental therapy would be available at all times for the emergent conditions
           which its license required it to be able to treat. It should also have had protocols in place
           requiring staff to verify that critical medications were available or to take appropriate measures
           in the absence of such medications, including the timely referral of patients to facilities where
           necessary care and treatment could be rendered.

       d.  Stroke is the third leading cause of death and a leading cause of adult disability in the United
           States. Acute ischemic stroke is an all too common disease which does have an approved
           therapy. To not have tPA readily available at a duly credentialed emergency department is
           unthinkable.

       e.  The failures outlined above constitute a departure from the standard of care applicable both to a
           Critical Access Hospital and its staff.

XII.   CAUSATION: The failure of the Marshall Browning Hospital and its staff to insure that Mr. Boothe
       received tPA within the 3 hour window of opportunity applicable to an emergency provider such as in this
       case deprived Mr. Boothe of the opportunity to have the progression of his stroke stopped and thereby to
       have limited the damage to his brain.

       It is reasonable to believe that Mr. Boothe's ultimate neurological outcome could have been improved
       through the timely administration of tPA as ordered, thereby preventing some or all of his disability.

XIII.  There is a reasonable and meritorious basis for bringing a medical negligence cause of action in this case
       against Marshall Browning Hospital both for institutional negligence as well as for the negligence of its
       staff, on account of the departures from the standard of care as set forth herein.

XIV.   These opinions should be viewed as preliminary at this time and based upon the medical records as
       supplied to date by the service providers. I reserve the right to revise and/or expand upon my findings
       and opinions as further information is developed during discovery.

_____

Arthur Pancioli, M.D.

Date: _1_ - _3_ - _12_